**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **DOUGHERTY D. SINGLETON ET AL., Plaintiffs** | **CIVIL ACTION** |
| **VERSUS** | **NO. 26-1168** |
| **JEFFERSON PARISH BOARD OF ELECTION SUPERVISORS ET AL., Defendants** | **SECTION: "E" (4)** |

## ORDER AND REASONS

Before the Court is the Motion to Dismiss filed by Defendants Jefferson Parish Board of Election Supervisors, Rhonda Saylor, Dennis Dimarco, and Nancy Landry ("Defendants").[1] Plaintiffs filed an Opposition.[2] Defendants filed a Reply.[3] Plaintiffs sought leave to file a surreply, which the Court granted.[4] Plaintiffs requested oral argument in this matter, which the Court held on September 8, 2026.[5]

## BACKGROUND

The following factual background is taken from the allegations of Plaintiff's Amended Complaint.[6] This action arises out of the May 16, 2026 City of Kenner election for City Council District 1.[7] Plaintiff David Weathersby was a candidate in that election, which he lost by six votes.[8] On the day of the election, Plaintiffs Rosa Bates, Precious Gregory, Franko Phillips, and Doughtery Singleton—all qualified voters who intended to

[1] R. Doc. 23.
[2] R. Doc. 24.
[3] R. Doc. 30.
[4] *See* R. Docs. 31-33.
[5] *See* R. Docs. 25, 32.
[6] R. Doc. 21.
[7] *Id.* at ¶ 2.
[8] *Id.*

cast a ballot for Weathersby—attempted to cast votes at the polling station at 641 Compromise Street.[9] Each of them was denied the opportunity to cast a vote on an electronic voting machine.[10] The Amended Complaint makes no allegation that Weathersby himself was denied the opportunity to vote.[11]

Bates was allowed to vote on a paper provisional ballot.[12] At least 10 other eligible voters (non-plaintiffs) were issued provisional ballots on election day.[13]

Gregory, while denied voting machine access, eventually was permitted to cast a ballot by paper provisional ballot.[14] The paper ballot she eventually used did not list Weathersby as a candidate, despite the fact that he was running in District 1 and that is the district in which she resides.[15]

Phillips, like Bates and Gregory, was not permitted to cast a machine vote on election day.[16] The Amended Complaint alleges he voted by paper provisional ballot.[17] On May 22, 2026, Phillips executed an affidavit attesting he voted for Weathersby.[18] At a later point, an unidentified representative of one of the Defendants annotated a copy of this affidavit with the words, "No knowledge if Voter came to Precinct to Vote / Voter is Active".[19]

---

[9] *Id.* at ¶¶ 13-15.
[10] *Id.*
[11] *See id.* at ¶ 16.
[12] *Id.* at ¶ 14. In federal elections, a provisional ballot is a failsafe mechanism for recording the intended votes of voters whose names do not initially appear to be on the rolls. *See* 52 U.S.C. § 21082. The disputed voter writes his or her choice on a provisional ballot along with a written affirmation of his or her eligibility in the election; the provisional ballot is then transmitted to a state election official who determines whether the disputed voter is, indeed, eligible under state law. *Id.* If so, the provisional ballot is counted like any other. *Id.*
[13] R. Doc. 21 at ¶ 34.
[14] *Id.* at ¶ 14.
[15] *Id.*
[16] *Id.* at ¶ 15.
[17] *See id.* at ¶ 34.
[18] *Id.*
[19] *Id.*

The Jefferson Parish Board of Election Supervisors had a "policy or custom of training commissioners to apply [federal] provisional ballot procedures without regard to whether the election involved a federal race[.]"[20]

Singleton is a Kenner resident with a prior felony conviction who alleges he had his voting rights restored prior to the May 16, 2026 election.[21] Under La. R.S. 18:102(A)(1)(a), no person shall be permitted to register or vote who is "under an order of imprisonment"; Singleton ceased to be under an order of imprisonment on January 26, 2019.[22] Weathersby facilitated Singleton's voter rights restoration.[23] Singleton submitted his voter registration application on April 10, 2026 through the GeauxVote.com portal, run by Defendant Nancy Landry, Secretary of State.[24] On May 16, 2026, Singleton appeared at the 641 Compromise Street poll location but was not permitted to vote by machine.[25] On May 27, 2026, Singleton received a certification that his voting rights had been restored.[26] Singleton alleges his voting rights were legally restored prior to the May 16 election, and the May 27 certification was an after-the-fact confirmation.[27]

The Court will refer to Plaintiffs Bates, Gregory, and Phillips collectively as "the Voter Plaintiffs." Since Singleton alleges different constitutional violations from the Voter Plaintiffs, the Court will address Singleton separately from the Voter Plaintiffs.

Between 6:00 and 7:00 p.m. on election night, Defendant Rhonda Saylor, the Jefferson Parish Director of Elections, telephoned Jillandra Johnson, who was then an employee of the Jefferson Parish Clerk of Court's office, and provided Ms. Johnson with

[20] *Id.* at ¶ 17.
[21] *Id.* at ¶ 12.
[22] *Id.*
[23] *Id.*
[24] *Id.*
[25] *Id.*
[26] *Id.*
[27] *See id.*

a list of voters who had been issued provisional ballots, but who had not had their votes counted.[28] The names on the list sent to Ms. Johnson are unknown.[29] Saylor asked Ms. Johnson to help her locate those voters before the 8:00 p.m. close of polls.[30] Another employee of the Clerk's office, Mem Barker, also called Ms. Johnson between 7:00 p.m. and 8:00 p.m. on election night with the same request.[31] After 8:00 p.m., Saylor again called Ms. Johnson; on that call, Ms. Johnson asked Saylor what would happen to the votes of the voters who had been improperly turned away, and Saylor replied that Ms. Johnson should speak with an attorney.[32]

On election night, Weathersby appeared before Saylor and Defendant Dennis DiMarco, the Jefferson Parish Registrar of Voters, and requested records from the election.[33] Saylor and DiMarco told him to make a public records request.[34] They did not notify him of the contents of La. R.S. 18:1411, which entitles a party to an objection to candidacy to certain expedited discovery procedures.[35] DiMarco and Saylor were aware that a public records request would take longer than the state law filing deadline for an objection to candidacy.[36]

On May 26, 2026 Weathersby filed a petition in the 24th Judicial District Court for the Parish of Jefferson contesting the election results.[37] A hearing for that petition was set for May 29, 2026.[38]

---

[28] *Id.* at ¶ 36.
[29] *Id.*
[30] *Id.*
[31] *Id.*
[32] *Id.*
[33] *Id.* at ¶ 37.
[34] *Id.*
[35] *Id.*
[36] *Id.*
[37] *See id.* *See* Petition Contesting Election, *Weathersby et al. v. Glaser et al.*, No. 876-128 (24th JDC May 26, 2026).
[38] *Id.* at ¶ 41.

The day before the hearing, May 28, 2026, Weathersby's counsel in the state court action served DiMarco with a subpoena *duces tecum* issued by the 24th Judicial District Court.[39] At the time of service, DiMarco stated that he was too busy to produce the subpoenaed records, that his people were leaving for the day, and that the hearing was the next day.[40] Later that day, in purported compliance with the subpoena, DiMarco provided Weathersby's counsel as well as counsel for the state court defendants with access to a Dropbox folder containing early vote sign-in sheets with precinct records for precincts K001, K005, K019, and K035, but not those for K033, the precinct in which Plaintiffs Bates and Gregory lived.[41] DiMarco did not appear at the hearing the following day.[42]

On May 29, 2026, the 24th Judicial District Court sustained exceptions to Plaintiff Weathersby's petition and dismissed the case for lack of specificity under La. R.S. 1406(B).[43]

Three days later, on June 1, 2026, Plaintiffs filed this lawsuit.[44] The Amended Complaint filed on August 7, 2026, in response to Defendant's first motion to dismiss, seeks damages against Defendants Saylor, DiMarco, and the Jefferson Parish Board of Elections under 42 U.S.C. § 1983 for denying the right to vote to the Voter Plaintiffs and Singleton, and for denying Plaintiff Weathersby access to the courts.[45] Plaintiffs also seek damages for violations of the Voting Rights Act and the Civil Rights Act of 1964, as well as damages for Defendants Saylor and DiMarco's alleged conspiracy to interfere with civil

---

[39] *Id.* at ¶ 38.
[40] *Id.*
[41] *Id.* at ¶¶ 39, 13-14. Phillips lives in Precinct K-26. *Id.* at ¶ 15. There is no allegation regarding the precinct in which Singleton lives.
[42] *Id.* at ¶ 41.
[43] *Id.*
[44] R. Doc. 1.
[45] R. Doc. 21 at ¶¶ 44-57.

rights under 42 U.S.C. § 1985(3).[46] Further, Plaintiffs seek prospective relief against Defendant Landry in the form of a declaratory judgment that provisional ballots are not allowed in Louisiana municipal elections; a declaratory judgment that Louisiana's Direct-Recording Electronic voting system without paper ballot backup or individual ballot preservation as applied to the City of Kenner election on May 16, 2026 violated their rights under the due process clause of the Fourteenth Amendment; and an injunction directing Defendant Landry to require a voting system that preserves individually verifiable ballot records capable of independent verification and recount for future City of Kenner elections.[47]

The Defendants filed a motion to dismiss these claims.[48] In opposition to that motion, Plaintiffs requested leave to amend their complaint.[49] The Court granted the requested leave and dismissed the Defendants' first motion to dismiss without prejudice.[50] The Defendants subsequently filed this Motion to dismiss the Amended Complaint, which seeks to dismiss Plaintiffs' claims for lack of subject matter jurisdiction, lack of standing, and for failure to state a claim, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[51]

The Court held oral argument on the Motion on September 8, 2026.[52] At the request of the Plaintiffs, and without objection from the Defendants, the Court dismissed Counts VI and VIII without prejudice.[53]

---

[46] *Id.* at ¶¶ 58-63.
[47] *Id.* at ¶¶ 64-74.
[48] R. Doc. 17.
[49] R. Doc. 19 at pp. 12-13.
[50] *See* R. Docs. 20-22.
[51] R. Doc. 23.
[52] *See* R. Doc. 32.
[53] *See id.*

# LEGAL STANDARD

## I. Rule 12(b)(1) Standard

Federal courts are courts of limited jurisdiction, possessing only the authority expressly granted and conferred by the United States Constitution or by statute.[54] A motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) challenges a federal court's subject-matter jurisdiction.[55] Under Rule 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."[56] The party asserting jurisdiction bears the burden of establishing that the district court possesses subject-matter jurisdiction.[57] "[W]hen a federal court concludes that it lacks subject matter jurisdiction, the court must dismiss the complaint in its entirety."[58] "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits."[59]

## II. Rule 12(b)(6) Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint for failure to state a claim upon which relief may be granted if the plaintiff has not set forth factual allegations in support of his claim that would entitle him to relief.[60] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[61] "A claim

---

[54] *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).
[55] *See* FED. R. CIV. P. 12(b)(1).
[56] *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (internal quotation marks and citation omitted).
[57] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).
[58] *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 502 (2006).
[59] *Ramming*, 281 F.3d at 161.
[60] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).
[61] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[62] The Court, however, does not accept as true legal conclusions or mere conclusory statements, and "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[63] Indeed, "threadbare recitals of elements of a cause of action, supported by mere conclusory statements" or "naked assertion[s] devoid of further factual enhancement" are not sufficient.[64]

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]'—that the pleader is entitled to relief."[65] However, "legal conclusions can provide the framework of a complaint, [if] they [are] supported by factual allegations."[66] "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[67] "Although detailed factual allegations are not required," "[d]ismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'"[68] Whether a plaintiff "will be able to offer sufficient proof to support [his or her] claims is more appropriate in the context of a motion for summary judgment or a trial on the merits" rather than in a motion to

---

[62] *Id.*
[63] *S. Christian Leadership Conf. v. Sup. Ct. of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001) (citing *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)).
[64] *Iqbal*, 556 U.S. at 663, 678 (citations omitted).
[65] *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)).
[66] *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.
[67] *Iqbal*, 556 U.S. at 679.
[68] *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009) (per curiam) (citations omitted).

dismiss.[69] "[I]ntensive disputes of material fact . . . are usually more appropriate for summary judgment . . . ."[70]

"When confronted with a qualified immunity defense at the pleadings stage, the plaintiff must plead 'facts which, if proved would defeat [the] claim of qualified immunity.'"[71] "It is the plaintiff's burden to demonstrate that qualified immunity is inappropriate."[72]

## LAW AND ANALYSIS

### III. Preliminary Jurisdictional Issues

#### A. 28 U.S.C. § 1344 neither provides nor bars jurisdiction for Counts I, II, V, and VII because Plaintiffs do not bring an election contest claim within the scope of the statute.

Defendants' challenge to jurisdiction affects all of the voting rights-derived claims: Counts I, II, V, and VII.[73]

28 U.S.C. § 1344 grants federal district courts "original jurisdiction of any civil action to recover possession of any office . . . authorized by law to be commenced, wherein it appears that the sole question touching the title to office arises out of a denial of the right to vote, to any citizen offering to vote, on account of race, color or previous condition of servitude."[74] There is no other statutory basis of jurisdiction for federal district courts "to hear and decide . . . what candidate received a majority of the votes legally cast in an

---

[69] *Smith v. GE Healthcare, Inc.*, No. 3:19-CV-00492, 2019 WL 4565246, at *7 (W.D. La. Sept. 4, 2019).
[70] *Dong Phuong Bakery, Inc. v. Gemini Soc'y, LLC*, No. CV 21-1109, 2022 WL 898750, at *5 (E.D. La. Mar. 28, 2022).
[71] *Guerra v. Castillo*, 82 F.4th 278, 285 (5th Cir. 2023) (quoting *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019).
[72] *Terwilliger v. Reyna*, 4 F.4th 270, 280 (5th Cir. 2021).
[73] The Defendants challenge jurisdiction over only the "disputed May 16 votes" under 28 U.S.C. § 1344. R. Doc. 23-1 pp. 0-10.
[74] 28 U.S.C. § 1344. The statute excepts from its grant of original jurisdiction any "elector of President or Vice President, United States Senator, Representative in or delegate to Congress, or member of a state legislature[.]" Since Weathersby's race is for city councilman, he does not fall within the exception.

election for state or local office."[75] The "perfunctory assertion of federal jurisdiction under [42 U.S.C.] § 1983 does not suffice to establish federal jurisdiction" over an action within the scope of 28 U.S.C. § 1344.[76] Thus, if the dispute constitutes a "civil action to recover possession of" an office, then to establish subject matter jurisdiction the plaintiff must allege facts sufficient to show "the sole question touching the title to office arises out of a denial of the right to vote . . . on account of race, color or previous condition of servitude."[77]

The Voter Plaintiffs and Singleton have not alleged they were denied the right to vote on account of their race.[78] Accordingly, the issue before the Court is whether their complaint constitutes a "civil action to recover possession of [an] office" and thereby falls within the scope of § 1344. If so, the Court does not have jurisdiction to hear the dispute.

Plaintiffs insist their suit is not an action to recover possession of a seat for David Weathersby to serve as Councilman for District 1.[79] As they state in their opposition, "Plaintiffs seek personal relief for completed constitutional injuries; they do not ask this Court to recount ballots, declare a different winner, award possession of office, or set aside the certified result. Councilmember Dunn remains the certified winner regardless of the disposition of the claims."[80] Indeed, a review of the Amended Complaint confirms the Plaintiffs seek only damages and injunctive relief and do not ask the Court to upset the results of the May 16 election.[81]

Defendants counter that this dispute is analogous to *Keyes v. Gunn*, in which the Fifth Circuit held that a § 1983 claim stemming from an election was functionally an

---

[75] *Keyes v. Gunn*, 890 F.3d 232, 237 (5th Cir. 2018) (quoting *Hubbard v. Ammerman*, 465 F.2d 1169, 1176 (5th Cir. 1972)).
[76] *Id.* at 238.
[77] 28 U.S.C. § 1344.
[78] *See* R. Doc. 21; R. Doc. 24 at p. 10 ("The Complaint does not allege racial animus.").
[79] R. Doc. 24 at p. 1.
[80] *Id.*
[81] R. Doc. 21 at pp. 26-38.

election contest, and so barred by § 1344.[82] Since the relevance of that case is at issue, the facts are worth recounting.

The *Keyes* case arose out of the 2015 Mississippi general election for state representative for District 79, which resulted in an exact tie between the incumbent and the challenger.[83] Under Mississippi law, candidates in a tied race draw lots to decide who gets possession of the office.[84] At the tie-breaking ceremony, the challenger won the election by drawing the long straw.[85] The incumbent thereafter filed a petition in the House of Representatives contesting the election.[86] The House of Representatives—a majority of whom belonged to the incumbent's party—convened a special committee to resolve the dispute.[87] That committee voted along party lines to discard five of nine affidavit ballots counted by the Secretary of State, thereby swinging the vote total to a victory for the incumbent.[88] The committee never revealed which five of the nine affidavit ballots they discarded.[89] The House then adopted a resolution nullifying the results of the tie-breaker ceremony and declaring the incumbent the winner of the District 79 general election.[90]

---

[82] *Keyes v. Gunn*, 890 F.3d 232 (5th Cir. 2018).
[83] *Keyes v. Gunn*, 230 F. Supp. 3d 588, 591 (S.D. Miss. 2017) *rev'd and remanded*, 890 F.3d 232 (5th Cir. 2018). At stake, however, was more than just the District 79 seat. Had the Democratic candidate won the seat, he would have blocked a Republican supermajority in the Mississippi House of Representatives. As such, the race "garnered a great deal of attention." *See id.*
[84] *Id.* at 591. *See also* Miss. Code. Ann. § 23-15-605 ("[I]f it appears that two (2) or more candidates . . . have an equal number of votes, the election shall be decided between the candidates having an equal number of votes by each candidate individually drawing one (1) of the two (2) sealed containers from an opaque bag, under the direction of the Governor and Secretary of State. The containers shall consist of a straw of conspicuous length, and the candidate drawing the container with the longer of the two (2) straws shall be declared the winner.").
[85] *Id.* at 591,
[86] *Id.* at 592.
[87] *Id.*
[88] *Id.*
[89] *See id.* at n.2.
[90] *Id.*

Thereafter, five voters—each of whom had cast ballots for the challenger via affidavit ballot—filed a complaint in the Southern District of Mississippi alleging the House committee discarded their votes in violation of the Equal Protection Clause.[91] Although the suit was brought under 42 U.S.C. § 1983, the voter plaintiffs stated they did not seek money damages, but rather "that [their] votes be counted" and that the result of the straw-drawing contest "be recognized and validated" by the court.[92] The trial judge in the Southern District of Mississippi found jurisdiction was not foreclosed by § 1344 on the basis that "[a]n election contest is fundamentally different from an equal protection challenge[.]"[93] The court reasoned that an election contest "seeks to determine which candidate 'received a majority of the votes legally cast'"[94] whereas an equal protection claim "examines whether the votes cast by plaintiffs were subjected to treatment different from others similarly situated."[95] "The former audits the election outcome, while the latter examines the election process."[96] The trial judge found the court would have no jurisdiction to provide an election contest remedy under § 1344 but did have jurisdiction to determine whether the plaintiffs had been denied their right to vote in violation of the Equal Protection Clause.[97]

On appeal, the Fifth Circuit reversed, finding the plaintiffs' § 1983 claim constituted an election contest within the scope § 1344.[98] The Fifth Circuit reasoned that

---

[91] *Id.*
[92] *Keyes v. Gunn*, 890 F.3d 232, 235 (5th Cir. 2018).
[93] *Keyes*, 230 F. Supp. 3d. at 593.
[94] *Id.* (quoting *Hubbard v. Ammerman*, 465 F.2d 1169, 1176 (5th Cir. 1972)).
[95] *Id.* (citing *Wilson v. Birnberg*, 667 F.3d 591, 599 (5th Cir. 2012)).
[96] *Id.*
[97] *Id.* at 593-94.
[98] *Keyes v. Gunn*, 890 F.3d 232 (5th Cir. 2018). The grant of jurisdiction under § 1344 exempts the offices of an "elector of President or Vice President, United States Senator, Representative in or delegate to Congress, or member of a state legislature[.]" Since the *Keyes* dispute arose from a state legislative election, § 1344 would not grant jurisdiction regardless of whether or not the plaintiff had made a showing of racial discrimination. Accordingly, the Fifth Circuit's analysis turned to the definition of an election contest contemplated by § 1344. "The sole issue is whether this lawsuit presents an election contest." *Id.* at 237.

a "perfunctory assertion of federal jurisdiction under § 1983" does not suffice to establish federal jurisdiction.[99] Instead, the issue is whether the § 1983 suit "presents an election contest, that is, a question of who won the most legal votes." The Fifth Circuit found "the facts speak for themselves" and showed the *Keyes* plaintiffs brought an election contest claim:

> [W]e cannot resolve the plaintiffs' alleged equal-protection claim because the merits of such a claim can be resolved only by examining the eligibility of each of the disputed voters, in order to determine who was denied equal treatment. This scenario necessarily would determine the winner and loser in the election contest.[100]

Accordingly, under *Keyes*, a § 1983 claim constitutes an election contest within the scope of § 1344 if the "unavoidable outcome of litigating the claim determines who won and who lost a disputed election[.]"[101]

Defendants argue Plaintiffs' claims present an election contest in the guise of a § 1983 claim à la *Keyes*. In this case, the election was decided by six votes, and there are only four plaintiffs before the court claiming they were denied the opportunity to have their votes counted. Defendants point out that Plaintiffs allege "at least 10 voters were affected by the same supposed provisional-ballot problem."[102] Defendants argue that, "[r]esolving those claims requires the Court to decide whether those voters were eligible, whether they were denied lawful ballots, and whether their votes should have counted in the District 1 race—the inquiry *Keyes* held impermissible."[103] Plaintiffs counter they do not seek relief "comparable" to that sought by the *Keyes* plaintiffs, highlighting they "do

---

[99] *Id.* at 238.
[100] *Id.* at 239 (citing *Hubbard v. Ammerman*, 465 F.2d 1169, 1176 (5th Cir. 1972)).
[101] *Id.* at 239-240.
[102] R. Doc. 23-1 at p. 10.
[103] *Id.*

not seek a recount, new election, declaration of a different winner, or installation of another officeholder."[104]

Defense counsel argues that whether or not a matter is an election contest is not a mere matter of what relief is requested. Instead, the Court must look beyond the particular relief requested to the substance and facts surrounding the claims. If the Court is asked to determine whether individual ballots should have been counted, but were not, Defendants argue that is an election contest.

Relying on *Keyes*, the Defendants argue the Plaintiffs' suit constitutes an election contest not based on race—pure and simple—in which § 1344 tells us the federal courts have no business.[105] In *Keyes*, the Fifth Circuit held that, if the resolution on the merits of a plaintiff's equal protection claim "necessarily would determine the winner and loser in the election contest," then, ergo, the plaintiff's equal protection claim constitutes an election contest within the scope of § 1344.[106]

The difference between *Keyes* and this case is that, in *Keyes*, the plaintiffs requested "that [their] votes be counted[;] that the [result of the straw-drawing] be recognized and validated by this Court and that [the incumbent's] position in the Mississippi House of Representatives be restored unto him[.]"[107] In this case, the Plaintiffs specifically state: "Plaintiffs do not ask this Court to determine who received a majority of the votes legally cast in the District 1 Council race, to declare a winner other than the certified incumbent, to unseat any officeholder, or to order a new election."[108]

---

[104] R. Doc. 24 at p. 3.
[105] *Keyes*, 890 F.3d at 239.
[106] *Id.*
[107] *Id.* at 235.
[108] R. Doc. 21 at ¶ 5.

The Defendants point to paragraph 25 of the Amended and Restated Complaint to support their argument that the Plaintiffs are asking the Court to determine which votes should be counted and who won the election. Paragraph 25 provides:

> On May 16, 2026, the City of Kenner held a primary election for City Council District 1 in ten precincts including K033, K026, and K031 — all served by the polling location at 641 Compromise Street, Kenner, Louisiana. Plaintiff David Weathersby ran against incumbent Dee Dunn. Dunn was certified as the winner by six (6) votes. Weathersby won the absentee ballot count 48 to 38 — a ten-vote margin in his favor among the only votes subject to independent verification. The six-vote certified margin is smaller than the number of Plaintiffs in this lawsuit who were denied the right to vote for David Weathersby at a single polling location on a single election day.[109]

Paragraph 25 appears in Section IV, Factual Allegations, of the Amended and Restated Complaint.[110] Despite this reference to the vote count in the election and the number of people denied the right to vote, nowhere in the Amended and Restated Complaint do Plaintiffs request that the Court determine which votes should be counted. In fact, the Plaintiffs specifically renounce any relief in the form of the declaration of a new winner.[111]

The Court finds Plaintiffs' action is not an "election contest" within the scope of § 1344. The Plaintiffs' allegations regarding the allegedly uncast votes do not amount to a request for a recount of the votes cast in the election or for a decision granting Weathersby possession of the city council office. Plaintiffs do not request equitable or prospective relief that would change the outcome of the election. Unlike the situation in *Keyes*, even if the Court were to examine votes of the Voter Plaintiffs and Singleton, there are not enough Plaintiffs claiming they were prevented from voting for Weathersby to call the declared winner of the office into question.[112] Since this is not an election contest, 28

[109] *Id.* at ¶ 25. The phrase "six-vote certified margin is smaller than the number of Plaintiffs in this lawsuit" appears to be a typo, as there are fewer than six plaintiffs in this case.
[110] *See id* at pp. 12-14.
[111] R. Doc. 24 at p. 3.
[112] Plaintiffs mention ten other voters who provided affidavits in the state-court proceedings describing the same pattern of denied machine access, improperly-issued provisional ballots, and conflicting or incorrect

U.S.C. § 1344 does not provide jurisdiction nor prevent the Court from exercising original jurisdiction over Plaintiffs' claims. The Court will deny Defendants' motion to dismiss based on Plaintiff's lack of jurisdiction under 28 U.S.C. § 1344.

**B. The *Rooker-Feldman* Doctrine does not bar federal jurisdiction over Weathersby's claims in Count III and Count IV for damages against DiMarco and Saylor.**

This challenge to jurisdiction affects Plaintiff Weathersby's access-to-courts claims against Defendants DiMarco and Saylor: Counts III and IV.

Under the *Rooker-Feldman* doctrine, "federal district courts lack jurisdiction over 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'"[113] A "hallmark of the *Rooker-Feldman* inquiry is the source of the federal plaintiff's alleged injury."[114] *Rooker-Feldman* bars subject matter jurisdiction when the federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court; however, if "a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker-Feldman* does not bar jurisdiction."[115]

Defendants contend *Rooker-Feldman* applies to Plaintiff Weathersby's claims arising out of his lost election-contest suit in the 24th Judicial District Court of Jefferson

information from poll workers. R. Doc. 21 at ¶ 34. This factual allegation is related to Plaintiffs' *Monell* claim to show a pattern of unconstitutional behavior. The affiants are not plaintiffs in this action, and no relief is requested with respect to them. The reference to the other ten individuals does not convert this into an election contest within the scope 28 U.S.C. § 1344.

[113] *T. M. v. Univ. of Maryland Med. Sys. Corp.*, 146 S. Ct. 1739, 1744 (2026) (quoting *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005)).

[114] *Truong v. Bank of Am., N.A.*, 717 F.3d 377, 382 (5th Cir. 2013) (citing *Exxon Mobil*, 544 U.S. at 284).

[115] *Id.* at 382-83 (quoting *Noel v. Hall*, 341 F. 3d 1148, 1164 (9th Cir. 2003)). *See also Scott v. Fortenberry*, 278 F. App'x. 440, 441 (5th Cir. 2008) (*Rooker-Feldman* does not bar a § 1983 plaintiff's claim for damages arising from court reporter's failure to prepare a trial transcript and consequent delay of his criminal appeal because the suit did not challenge his conviction).

Parish, specifically Counts III and IV of the Amended Complaint against Defendants DiMarco and Saylor.[116] Defendants argue (1) Weathersby lost his state-court election contest when the 24th Judicial District Court dismissed his election contest with prejudice on May 29, 2026;[117] (2) Weathersby complains of injuries caused by the judgment, as the Amended Complaint refers to the May 29 dismissal as "the completion of a constitutional deprivation that began on election night" and seeks damages for "the loss of the opportunity to litigate his election contest to a merits determination";[118] (3) Weathersby's May 29 loss in the 24th Judicial District preceded the June 1 filing of the instant suit;[119] and (4) Weathersby, in effect, asks the court to review and reject the 24th Judicial District Court's May 29 judgment as a biased application of Louisiana pleading rules.[120] Defendants maintain Weathersby's assertion that his injury occurred "before and separate from" the May 29 judgment is conclusory.[121]

Defendants argue Weathersby has no Fourteenth Amendment Due Process Claim because, whatever happened with the Voter Plaintiffs, Weathersby was allowed to file his election contest and was not denied access to the state court. As a result, Defendants argue, Weathersby was not denied his due process rights, his claimed deprivations are things that happened in the state court action, and, as a result, the Court lacks jurisdiction.

Plaintiffs argue *Rooker-Feldman* is inapplicable because their Amended Complaint alleges injuries caused by DiMarco and Saylor's "pre-judgment conduct, not

[116] R. Doc. 23-1 at pp. 10-11. *See* R. Doc. 21 at pp. 28-33.
[117] R. Doc. 23-1 at p. 10. *See* R. Doc. 21 at ¶ 11.
[118] R. Doc. 23-1 at p. 10-11. *See* R. Doc. 21 at ¶¶ 43, 54.
[119] R. Doc. 23-1 at p. 11. *See* R. Doc. 1.
[120] R. Doc. 23-1 at p. 11. *See* R. Doc. 21 at ¶ 43.
[121] R. Doc. 23-1 at p. 11. *See* R. Doc. 21 at ¶ 11.

[caused] by the state-court judgment."[122] Plaintiffs emphasize the 24th Judicial District "addressed only exceptions directed to the form of Weathersby's petition; it did not decide whether Defendants deprived him of the record needed to litigate the election contest."[123]

The Court finds that, because they are limited to Defendants DiMarco and Saylor individually, Counts III and IV of the Amended Complaint are not barred by the *Rooker-Feldman* doctrine. In these counts, Weathersby alleges DiMarco and Saylor improperly misdirected him away from the legal processes to which he was entitled, foreclosing his "opportunity to litigate his election contest to a merits determination[.]"[124] Weathersby's alleged damage results from "acts or omissions by an adverse party[,]" as opposed to the harm caused by "an allegedly erroneous decision by a state court[.]"[125] The Court will deny Plaintiff's motion to dismiss based on Plaintiff's lack of jurisdiction under the *Rooker-Feldman* doctrine.

### C. Plaintiffs have standing to seek a prospective injunction against Landry in Count VII.

Defendants argue various Plaintiffs lack standing to bring Counts II, V, and VII. Plaintiff Singleton's claims in Counts II and V are complex and the Court will address them separately in Section IV *infra*. The Court will address the Plaintiffs' request for a declaratory judgment in Count VII in Subsection D on sovereign immunity *infra*.[126] This subsection will address all Plaintiffs' standing to seek the equitable remedy of a prospective injunction against Defendant Landry in Count VII.[127]

---

[122] R. Doc. 24 at p. 4.
[123] *Id.*
[124] R. Doc. 21 at ¶ 54.
[125] *Truong v. Bank of Am., N.A.*, 717 F.3d 377, 382-83 (5th Cir. 2013) (quoting *Noel v. Hall*, 341 F. 3d 1148, 1164 (9th Cir. 2003)).
[126] *See* R. Doc. 21 at ¶ 71.
[127] In the Amended Complaint, Plaintiffs clarify they do not seek damages against Defendant Landry. *See id.* at ¶ 49.

In Count VII, all Plaintiffs allege that, as applied to them, the absence of a verification system in Louisiana's DRE voting system deprives them of their right to verify their vote was accurately recorded, correctly attributed, and counted in the correct race as protected by the Fourteenth Amendment's due process guarantee.[128] As relevant to the standing inquiry, they seek a declaratory judgment that the DRE voting system violated the due process clause and an injunction directing Landry to require a voting system that preserves individually verifiable ballot records for future Kenner municipal elections.[129]

A plaintiff seeking "redress in federal court must meet the initial 'requirement imposed by Article III of the Constitution by alleging an actual case or controversy.'"[130] To establish Article III standing, "each plaintiff must demonstrate an injury that is [1] 'concrete, particularized, and actual or imminent; [2] fairly traceable to the challenged action; and [3] redressable by a favorable ruling.'"[131] "[S]tanding is not dispensed in gross. That is, plaintiffs must demonstrate standing for each claim that they press against each defendant, and for each form of relief that they seek."[132]

Defendants argue the existence of Louisiana's DRE voting system does not supply a cognizable basis for prospective relief.[133] Defendants contend Plaintiffs "identify spring 2030 as the next regular Kenner election and otherwise allege only that they intend to vote in future Jefferson Parish elections."[134] Defendants note Secretary Landry has

---

[128] R. Doc. 21 at ¶¶ 65-71.
[129] *Id.* at ¶¶ 70-71.
[130] *Attala Cnty., Miss. Branch of NAACP v. Evans*, 37 F.4th 1038, 1042 (5th Cir. 2022) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983)).
[131] *Id.* (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)).
[132] *Murthy v. Missouri*, 144 S. Ct. 1972, 1988 (2024) (quoting *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021)) (cleaned up) (internal quotation marks omitted). *See also City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) (plaintiff with standing to sue for damages under § 1983 nonetheless lacked standing to sue for injunctive relief).
[133] R. Doc. 23-1 at p. 12.
[134] *Id. See* R. Doc. 21 at ¶ 8.

announced that "Louisiana is already acquiring a new, fully auditable voting system, with selection expected by the end of 2026," i.e., before the next Kenner municipal election.[135] Defendants argue, therefore, that Plaintiffs cannot show "a substantial risk that they will imminently encounter the voting system challenged in Count VII."[136]

Plaintiffs argue Landry's intended adoption of an auditable voting system constitutes "voluntary cessation" which, under Supreme Court precedent, "moots a case only when it is absolutely clear that the challenged conduct cannot reasonably recur."[137] Plaintiffs contend an auditable system "merely expected to be selected in the future has not been . . . shown to eliminate the alleged risk of future use of the present system."[138] As such, under Plaintiffs' theory, Count VII is not moot because it is not "absolutely clear that the allegedly wrongful behavior could not be reasonably expected to recur."[139]

Standing and mootness, while related, are distinct concepts. "At all stages of litigation a plaintiff must maintain a personal interest in the dispute. The doctrine of standing generally assesses whether that interest exists at the outset, while the doctrine of mootness considers whether it exists throughout the proceedings."[140] Defendants' Motion presents a challenge to Plaintiffs' standing. To establish standing for prospective relief, such as an injunction, "the plaintiff must establish a sufficient likelihood of future injury[,]" in addition to causation and redressability.[141]

---

[135] R. Doc. 23-1 at pp. 12-13. *See* La. Sec'y of State, *Secretary Landry Announces Voting System Public Demonstration*, perma.cc/82LR-CWQR (July 21, 2026).
[136] R. Doc. 23-1 at p. 13.
[137] R. Doc. 24 at p. 5; *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC) Inc.*, 528 U.S. 167, 189 (2000).
[138] R. Doc. 24 at p. 5.
[139] *Friends of the Earth*, 528 U.S. at 189 (2000) (quoting *United States v. Concentrated Phosphate Export Assn.*, 393 U.S. 199, 203 (1968)).
[140] *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 796 (2021).
[141] *Food & Drug Admin. v. All. for Hippocratic Med.*, 144 S. Ct. 1540, 1556 (2024).

Defendants argue Plaintiffs must establish standing by showing there is a credible threat of future use of the DRE voting system by alleging facts that make it plausible Plaintiffs will face future injury. Defendants argue there is no credible threat of future use because the Secretary of State has denounced any intent to use the challenged system in a Kenner election.

The Court finds Plaintiffs have standing to seek a prospective injunction against Landry under Count VII as they have shown a "sufficient likelihood of future injury" traceable to Secretary Landry which is redressable by court action.[142] Plaintiffs intend to vote in future Jefferson Parish elections, and, at this time, Louisiana's DRE voting system continues to be in use and apparently will be a feature of every future Jefferson Parish election in which Plaintiffs participate. Landry's stated intent to implement a fully-auditable voting system does not obviate Plaintiffs' standing in this respect, because intent is not execution. If Landry does implement an auditable voting system at some later date, then, at that point, the parties can dispute whether Plaintiffs' requested relief has become moot. At this initial stage of the pleadings, there is a sufficient likelihood of future injury.

Finally, the alleged harm that could be caused by the DRE voting system is traceable to Landry, as she maintains and oversees that system. An injunction issued by this Court directing Landry to implement a voting system that preserves individually-verifiable ballot records would redress the injury Plaintiffs allege they suffer from the current DRE system. As such, Plaintiffs have standing to seek an injunction in Count VII. The Court will deny Defendants' motion to dismiss based on Plaintiff's lack of standing to seek a prospective injunction against Landry in Count VII.

---

[142] *Id.*

**D. Landry's sovereign immunity shields her from a backward-looking declaratory judgment under Count VII.**

Under Count VII Plaintiffs seek a declaratory judgment against Landry that Louisiana's DRE voting system "as deployed in the May 16, 2026 City of Kenner District 1 Council primary election without paper ballot backup or individual ballot preservation violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution."[143]

Defendants argue that Landry, as Secretary of State, is entitled to the protection of state sovereign immunity and is therefore shielded from Plaintiffs' requested declaratory judgment.[144] As a general rule, "[s]overeign immunity forbids suits against a State and its officers in their official capacities."[145] *Ex parte Young*, however, provides an exception to the general rule, by which "a litigant may sue a state official in his official capacity as long as the lawsuit seeks prospective relief to redress an ongoing violation of federal law."[146] "If the act which the state attorney general seeks to enforce be a violation of the Federal Constitution, the officer, in proceeding under such enactment, comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character . . . ."[147] "In order to determine whether relief is permitted under the *Ex parte Young* exception, the court should look to the 'substance rather than to the form of the relief sought[.]'"[148]

---

[143] R. Doc. 21 at ¶ 71.
[144] R. Doc. 23-1 at pp. 13-14.
[145] *U.S. v. Abbott*, 85 F.4th 328, 333 (5th Cir. 2023) (citing *Fitts v. McGehee*, 172 U.S. 516, 524-27 (1899)).
[146] *Freedom from Religion Foundation v. Abbott*, 955 F.3d 417, 424 (5th Cir. 2020) (citing *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 394-95 (5th Cir. 2015)).
[147] *Ex parte Young*, 209 U.S. 123, 159-160 (1908).
[148] *Freedom from Religion Foundation v. Abbott*, 955 F.3d 417, 425 (5th Cir. 2020) (quoting *Papasan v. Allain*, 478 U.S. 265, 279 (1986)).

The Defendants argue that to overcome the Secretary of State's sovereign immunity defense, the plaintiff must meet the standard of *Ex parte Young*. For *Ex Parte Young* to apply, "(1) A plaintiff must name individual state officials as defendants in their official capacities; (2) the plaintiff must allege an ongoing violation of federal law; and (3) the relief sought must be properly characterized as prospective."[149] "[A] court need only conduct a "straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'"[150] But nonspecific and speculative allegations of continuing unlawful conduct are insufficient to demonstrate an ongoing violation under *Ex Parte Young*.[151] And failure to allege an ongoing violation is fatal.[152]

*Freedom from Religion Foundation v. Abbott* offers a pertinent example.[153] In 2015, a non-profit organization advocating the separation of church and state acquired a permit to erect a "Bill of Rights nativity exhibit" at the state capitol.[154] Four days after the exhibit went on display, Texas Governor Greg Abbott ordered a state official to remove the exhibit as offensive to "morals and the general welfare," which the official then did.[155] Later, in 2016, the organization submitted a new application for a permit to erect the same exhibit for the upcoming Christmas season.[156] The same state official who had removed the 2015 exhibit denied the 2016 application, citing Governor Abbott's prior order.[157] The

149 *Tawakkol v. Vasquez*, 87 F.4th 715, 718 (5th Cir. 2023) (citation omitted).
150 *City of Austin v. Paxton*, 943 F.3d 993, 998 (5th Cir. 2019) (quoting *Va. Off. for Prot. & Advoc. V. Stewart*, 563 U.S. 247, 255 (2011)).
151 *James v. Hegar*, 86 F.4th 1076, 1083 (5th Cir. 2023).
152 *See Morrison v. Dall. Cnty. Hum. Sex Trafficking Task Force*, No. 23-cv-2046, 2023 WL 9231399, at *4 (N.D. Tex. Dec. 6, 2023) (citations omitted), *report and recommendation adopted*, 2024 WL 150506 (Jan. 12, 2024).
153 *Freedom from Religion Foundation v. Abbott*, 955 F.3d 417 (5th Cir. 2020).
154 *Id.* at 421.
155 *Id.* at 422.
156 *Id.* at 423.
157 *Id.*

organization filed a complaint against Governor Abbott and the official seeking prospective relief and alleging the denial of the 2016 application for a permit constituted viewpoint discrimination in violation of the First Amendment.[158]

Relevant to this case, the district court had issued a declaratory judgment stating the defendants violated the plaintiff's First Amendment rights in 2015 when they removed the Bill of Rights nativity exhibit.[159] The Fifth Circuit vacated the declaratory judgment because it constituted "purely retrospective relief" and so was barred by sovereign immunity.[160] The court reasoned the district court's "backwards-looking, past-tense declaratory judgment . . . is 'tantamount to an award for damages for a past violation of law, even though styled as something else.'"[161] While acknowledging such a declaratory judgment could potentially have prospective effects, the court nonetheless ruled such interests are "insufficient to overcome the dictates" of sovereign immunity.[162]

Defendants argue that Count VII of the Amended Complaint seeks a "retrospective declaration" which is "categorically unavailable" under the jurisprudence cited above.[163] Plaintiffs, for their part, maintain their allegations "concern the statewide voting system and prospective use of that system, not only a completed local election dispute."[164]

To the extent Count VII seeks prospective relief via an injunction against an ongoing violation of federal law, sovereign immunity does not shield Landry from suit under *Ex parte Young*, and the Court will deny the Defendants' Motion to Dismiss. However, to the extent Count VII seeks a backward-looking declaratory judgment that the

[158] *Id.*
[159] *Id.*
[160] *Id.* at 425-26.
[161] *Id.* (quoting *Papasan v. Allain*, 478 U.S. 265, 278 (1986)).
[162] *Id.* at 426. (citing *Green v. Mansour*, 474 U.S. 64, 68 (1985)).
[163] R. Doc. 23-1 at p. 14.
[164] R. Doc. 24 at p. 5.

DRE voting system violated the Plaintiffs' rights on May 16, 2026, such a request is for retrospective relief and so falls outside the bounds of the *Ex parte Young* exception to sovereign immunity. The Court finds Plaintiffs are barred from seeking a retrospective declaratory judgment under Count VII, but they may pursue prospective injunctive relief. The Court will grant the Defendants' Motion to Dismiss only as to any backward-looking declaratory judgment under Count VII.

## IV. Singleton has no standing to pursue prospective relief against Landry in Count II and Count V and will not be given leave to amend his claims against Landry under these counts.

Singleton's claims are complex and distinct from the claims of the Voter Plaintiffs. As a result, the Court is addressing them separately. As required when a 12(b)(1) motion is filed in conjunction with a 12(b)(6) motion, the Court will consider the jurisdictional attack on Singleton's standing before addressing his claims on the merits below.[165] Defendants argue the Court lacks jurisdiction over Singleton's request for prospective relief against Defendant Landry, which forms part of both Counts II and V.

In Count II of the Amended Complaint, Singleton seeks "injunctive relief [against Landry] addressing the systemic failure of the GeauxVote system her office administers[.]"[166] In Count V, Singleton alleges that all defendants violated the Materiality Provision of the Civil Rights Act of 1964, 52 U.S.C. § 10101(a)(2)(B) by failing to activate his voter registration.[167] He seeks damages, declaratory relief, and attorneys' fees against Saylor, DiMarco, and the Board.[168] Singleton does not seek damages against Landry.[169]

---

[165] *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).
[166] R. Doc. 21 at ¶ 49.
[167] *Id.* ¶¶ 58-60. The Amended Complaint describes this as a claim under the Voting Rights Act, but the only provision they cite, 52 U.S.C. § 10101(a)(2)(B), was enacted under the Civil Rights Act of 1964. *See Vote.Org v. Callanen*, 89 F.4th 459, 473 (5th Cir. 2023).
[168] *Id.*
[169] R. Doc. 21 at ¶ 49.

A plaintiff seeking "redress in federal court must meet the initial 'requirement imposed by Article III of the Constitution by alleging an actual case or controversy.'"[170] To establish Article III standing, "each plaintiff must demonstrate an injury that is [1] 'concrete, particularized, and actual or imminent; [2] fairly traceable to the challenged action; and [3] redressable by a favorable ruling.'"[171] "[S]tanding is not dispensed in gross. That is, plaintiffs must demonstrate standing for each claim that they press against each defendant, and for each form of relief that they seek."[172]

Defendants argue Singleton does not have standing to seek prospective injunctive relief against Landry on either of these counts because—regardless of his alleged voting status on May 16, 2026—Singleton acknowledges he received a certification of the restoration of his voting rights on May 27, 2026.[173] Because Singleton's voter registration has now been processed in the GeauxVote registration system, Singleton cannot establish a certain impending injury redressable by court action in the form of an injunction or a declaratory judgment. Plaintiffs make no counterargument.[174]

Since Singleton's voting rights now have unambiguously been restored, the Court finds Singleton has no injury redressable by an injunction. Accordingly, Singleton does not have standing to seek prospective relief against Landry under Count II or Count V. Singleton will not be given leave to amend his claims against Landry under these counts.

---

170 *Attala Cnty., Miss. Branch of NAACP v. Evans*, 37 F.4th 1038, 1042 (5th Cir. 2022) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983)).
171 *Id.* (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)).
172 *Murthy v. Missouri*, 144 S. Ct. 1972, 1988 (2024) (quoting *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021)) (cleaned up) (internal quotation marks omitted). *See also City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) (plaintiff with standing to sue for damages under § 1983 nonetheless lacked standing to sue for injunctive relief).
173 R. Doc. 23-1 at p. 12. *See* R. Doc. 21 at ¶ 12.
174 *See* R. Doc. 24 at pp. 4-5.

## V. Count II: Singleton's § 1983 damages claim against Defendants Saylor, DiMarco, and the Jefferson Parish Board of Election Supervisors

The above section addressing Singleton's lack of standing only concerns only prospective relief he may pursue against Landry. It does not apply to retrospective relief he may seek under Counts II and V . Under these counts, Plaintiff Singleton brings a Section 1983 damages claim against Defendants Saylor, DiMarco, and the Jefferson Parish Board of Election Supervisors alleging they denied Singleton's right to vote in violation of the Fourteenth Amendment.[175]

### A. Singleton will be allowed to amend his claim under Count II against DiMarco and Saylor in their individual capacities.

To state a claim under 42 U.S.C. § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."[176] The Constitution of the United States "protects the right of all qualified citizens to vote, in state as well as in federal elections."[177] "Having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another."[178] The Equal Protection Clause protects against "the 'unlawful administration by state officers of a state statute fair on its face, resulting in unequal application to those who are entitled to be treated alike.'"[179] In such a "class-of-one" claim, the plaintiff must establish "(1) he was 'intentionally treated differently from others

[175] R. Doc. 21 at p. 27-28 ¶¶ 48-50. Under this count, Plaintiffs also seek "prospective declaratory and injunctive relief [against Landry in her official capacity] addressing the systemic failure of the GeauxVote system her office administers[.]" *Id*. As has been discussed above in this Order, this prospective claim fails because Singleton has already received certification of his eligibility.
[176] *West v. Atkins*, 487 U.S. 42, 48 (1988) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)).
[177] *Reynolds v. Sims*, 377 U.S. 533, 554 (1964).
[178] *Bush v. Gore*, 531 U.S. 98, 104-05 (2000).
[179] *Wilson v. Birnberg* 667 F.3d 591, 99 (5th Cir. 2012) (quoting *E & T Realty v. Strickland*, 830 F.2d 1107, 1112-13 (11th Cir. 1987)).

similarly situated' and (2) there was no rational basis for any such difference."[180] "Unlike systematically discriminatory laws, isolated events that adversely affect individuals are not presumed to be a violation of the equal protection clause."[181]

Defendants move to dismiss Singelton's claim against Saylor and DiMarco in their individual capacities on the basis that Singleton has not alleged any facts as to the denial of his right to vote sufficient to surmount a qualified immunity defense.[182] Indeed Defendants point out that Singleton's theory places exclusive blame at the feet of Defendant Landry, stating in the Amended Complaint that "[t]he failure to activate [Singleton's registration] occurred entirely within Defendant Landry's system."[183] There are no factual allegations relating to this count as to Saylor.[184] As to DiMarco, the only factual allegation appears to be conditional: "[I]f [Singleton's registration] was forwarded, the registrar[] . . . fail[ed] to act on it before election day[.]"[185]

Plaintiffs contend that dismissal of claims against Saylor and DiMarco is "not warranted on the present record."[186]

The Amended Complaint, as written, has failed to state an equal protection claim as to DiMarco and Saylor individually under Count II. To survive a motion to dismiss his § 1983 claim, Singleton must allege (1) a violation of rights secured by the constitution of the United States; and (2) demonstrate that that the alleged deprivation was committed by a person acting under color of state law.[187] To establish a constitutional equal protection

---

[180] *Wilson v. Birnberg* 667 F.3d 591, 99 (5th Cir. 2012) (quoting *Whiting v. Univ. of So. Miss.*, 451 F.3d 339, 348 (5th Cir. 2006).
[181] *Gamza v. Aguirre*, 619 F.2d 449, 453 (1980).
[182] R. Doc. 23-1 at p. 17.
[183] R. Doc. 21 at ¶ 12.
[184] *See* R. Doc. 23-1 at p. 17.
[185] R. Doc. 21 at ¶ 21.
[186] R. Doc. 33 at p. 5.
[187] *See West v. Atkins*, 487 U.S. 42, 48 (1988) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)).

violation in the voting rights context against either one of them, Singleton must allege that he was denied the right to vote on a discriminatory basis, either that he was discriminated against based on his membership in a protected class, or that he composes a class of one and was both intentionally treated differently from others similarly situated and that there was no rational basis for the difference.[188] Further, Singleton must allege facts connecting Saylor or DiMarco to the deprivation of his voting rights, and those facts must be sufficient to surmount qualified immunity at the pleading stage. This means Singleton must allege facts sufficient to plausibly show that DiMarco's or Saylor's conduct under the color of state law (1) violated a constitutional right, as discussed above, and (2) was not objectively reasonable in light of clearly established law.[189] The court will grant Singleton leave to amend his complaint under Rule 15(a)(2) as to his claims against Saylor and DiMarco under Count II.[190]

### B. Singleton will be allowed to amend his *Monell* claim under Count II against the Jefferson Parish Board of Election Supervisors.

To state a claim against a local government entity under *Monell v. Department of Social Services of City of New York*, a plaintiff must plead facts sufficient to "plausibly establish that '(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right.'"[191]

Defendants argue Singleton has failed to establish a *Monell* claim against the Board because he has not alleged an official Board policy that caused his injury.[192] Plaintiffs

---

[188] *See Wilson v. Birnberg* 667 F.3d 591, 99 (5th Cir. 2012) (quoting *Whiting v. Univ. of So. Miss.*, 451 F.3d 339, 348 (5th Cir. 2006).
[189] *See Blackwell v. Laque*, 275 F. App'x 363, 366 (5th Cir. 2008).
[190] *See* FED. R. CIV. P. 15(a)(2).
[191] *Merriott v. City of Bossier City*, 179 F.4th 393, 412 (5th Cir. 2026) (quoting *St. Maron Props., L.L.C. v. City of Houston*, 78 F.4th 754, 760 (5th Cir. 2023)). *See Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978).
[192] R. Doc. 23-1 at p. 17; R. Doc. 30 at p. 10-11.

oppose dismissal of their claim as to the Board, arguing that the Board failed to train its poll workers as shown by their failure to contact the registrar of voters or Secretary of State to resolve the question of Singleton's registration status, which deprived him of his right to vote.[193]

The Court finds that, at this point, Singleton has failed to establish a *Monell* claim because he has not alleged an official policy of the Jefferson Parish Board of Election Supervisors that was the moving force behind the violation of his constitutional rights. Under *Monell*, there are three ways to establish an official policy "(1) 'written policy statements, ordinances, or regulations'; (2) 'a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy'; or (3) 'a single decision . . . when the official or entity possessing a final policymaking authority for an action performed the specific act that forms the basis of the § 1983 claim.'"[194] The Amended Complaint does none of these. The only factual allegations the Amended Complaint makes about the Board are that it trained poll workers to issue inapplicable provisional ballots in municipal elections; the Amended Complaint does not make factual allegations as to how the Board trained poll workers to resolve questions of voter eligibility.[195] To survive a motion to dismiss on his *Monell* claim, Singleton must plead facts sufficient to "plausibly establish that '(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right.'"[196] To properly plead an official policy, Singleton must allege either "(1) 'written policy statements, ordinances, or regulations'; (2) 'a widespread practice that is so

[193] R. Doc. 24 at p. 8.
[194] *Merriott*, 179 F.4th at 412 (quoting *St. Maron Props*, 78 F.4th at 760).
[195] *See* R. Doc. 21 at ¶¶ 17, 28, 48-50.
[196] *Merriott*, 179 F.4th at 412(quoting *St. Maron Props.*,, 78 F.4th at760 ).

common and well-settled as to constitute a custom that fairly represents municipal policy'; or (3) 'a single decision . . . when the official or entity possessing a final policymaking authority for an action performed the specific act that forms the basis of the § 1983 claim.'"[197]

To establish an official policy under the "widespread practice" route, Singleton must "do more than describe the incident that gave rise to his injury."[198] Singleton must allege specific facts, which, taken as true, attest to a practice "so persistent and widespread as to practically have the force of law."[199]

To establish municipal liability against the Board on a failure-to-train theory, Singleton must allege "(1) that the [Board's] training procedures were inadequate, (2) that the [Board] was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused the violation[] in question."[200]

The Court will grant Plaintiffs leave to amend Count II under Rule 15(a)(2) as to Singleton's *Monell* claims against the Board.[201]

## VI. Count V: Singleton will be allowed to amend his § 1983 claims against Saylor, DiMarco, and the Board for a violation of the Materiality Provision of the Civil Rights Act of 1964.

Singleton alleges that all Defendants violated the Materiality Provision of the Civil Rights Act of 1964, 52 U.S.C. § 10101(a)(2)(B), by failing to activate his voter registration.[202] As the Court has found in Section IV above, Singleton does not have

---

[197] *Id.* (quoting *St. Maron Props., L.L.C. v. City of Houston*, 78 F.4th 754, 760 (5th Cir. 2023)).
[198] *Ratliff v. Aransas County*, 948 F.3d 281, 285 (5th Cir. 2020) (quoting *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018)).
[199] *Peña*, 879 F.3d at 622 (quoting Connick v. Thompson, 563 U.S. 51, 61 (2011)).
[200] *Ratliff*, 948 F.3d at 285 (quoting *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 170 (5th Cir. 2010)).
[201] *See* FED. R. CIV. P. 15(a)(2).
[202] R. Doc. 21 at ¶¶ 58-60. The Amended Complaint describes this as a claim under the Voting Rights Act, but the only provision they cite, 52 U.S.C. § 10101(a)(2)(B), was enacted under the Civil Rights Act of 1964. *See Vote.Org v. Callanen*, 89 F.4th 459, 473 (5th Cir. 2023).

standing to seek prospective relief under this count against Landry. However, Singleton also seeks compensatory damages, declaratory relief, and attorneys' fees from Defendants Saylor, DiMarco, and the Board.[203]

Under 52 U.S.C. § 10101(a)(2)(B) , known as the Materiality Provision of the Civil Rights Act of 1964, it is unlawful for any person acting under color of state law to "deny the right of any individual to vote in any election because of an error or omission on any record or paper relating to any application, registration or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election."[204] The Materiality Provision is enforceable through 42 U.S.C. § 1983.[205]

Defendants argue similarly that Singelton's invocation of the Materiality Provision against Saylor, DiMarco, and the Board is irrelevant because Singleton's alleged injury is that Defendant Landry failed to activate his completed application, which is distinct from a denial of his voter registration application for an immaterial reason, the conduct prohibited by the statute.[206] So Defendants argue, the Materiality Provision "does not federalize every alleged failure to process a registration application."[207]

Singleton alleges he submitted his voting rights restoration application on April 10, 2026 through GeauxVote.com, the official online voter registration portal owned, operated, and administered by the Louisiana Secretary of State.[208] Singleton alleges he answered all the voter eligibility questions truthfully and in a way that showed he was

---

[203] R. Doc. 21 at ¶¶ 58-60.
[204] 52 U.S.C. § 10101.
[205] *Vote.Org*, 89 F.4th at 475.
[206] R. Doc. 23-1 at p. 24.
[207] *Id.*
[208] R. Doc. 21 at ¶ 27.

eligible to have his voting rights restored under La. R.S. 18:102 and La. R.S. 18:115.1.[209] Singleton alleges his eligibility to vote was never restored on the voting rolls of Jefferson Parish and he was denied the right to vote on May 16, 2026.[210] Singleton alleges poll workers failed to contact the Registrar of Voters to resolve his eligibility, as they were required to do by law.[211] Singleton alleges this submission was completed well in advance of the voter registration deadlines for the May 16, 2026 election, 30 days before the election generally and 20 days before an election for an applicant who registers through the electronic system.[212] Yet, his name did not appear on the active voter rolls at the 641 Compromise Street polling place.[213]

Civil rights cases are not subject to a heightened pleading standard. Pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint for failure to state a claim upon which relief may be granted only if the plaintiff has not set forth factual allegations in support of his claim that would entitle him to relief.[214] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[215] Singleton alleges he submitted his voter rights registration and answered all the questions in a manner that showed he was eligible to have his voting rights restored. Nevertheless, his name was not listed on the voter rolls and he was denied the right to vote.

The Court finds that Singleton's allegations concerning his application or registration to vote are covered by the Materiality Provision of the Voting Rights Act.

---

[209] *Id.* at ¶¶ 30-31.
[210] *Id.* at ¶¶ 27-28.
[211] *Id.* at ¶ 12.
[212] *Id.* at ¶ 31. *See* La. R.S. 18:135(A)(1) and (3).
[213] *Id.* at ¶ 27.
[214] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).
[215] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

Vindicating these allegations would entitle him to compensation via an award of damages pursuant to § 1983. However, Singleton's allegations concern only the conduct of Defendant Landry, and the Eleventh Amendment immunizes Defendant Landry from suit for damages.[216] As a result, Singleton's allegations do state a damages claim, but only against the one defendant who is immune from a damages suit.

Singleton alleges the failure to activate his voter registration occurred "entirely within Defendant Landry's system[.]"[217] As the Court has discussed above, Singleton has made no factual allegations tying Saylor or DiMarco's conduct to Landry's alleged failure to activate his voter registration. Nor has Singleton alleged an official policy of the Board that contributed to Landry's alleged failure. Accordingly, Singleton has failed to state a claim as to these defendants.

Under Count V, Singleton's claim for prospective relief against Landry fails for lack of standing, and any claim for retrospective relief Singleton may have brought against Landry fails because the Eleventh Amendment immunizes Landry from a damages suit. The Court will dismiss Singleton's claims against Landry under Count V with prejudice.

In the Amended Complaint, as it now stands, Singleton fails to state a claim under Count V against Saylor, DiMarco, and the Board.

To survive a motion to dismiss on his § 1983 damages claim against DiMarco and Saylor in Count V, Singleton must allege (1) a violation of rights secured by the Materiality Provision; and (2) demonstrate that that the alleged deprivation was committed by a person acting under color of state law.[218] In the context of the Materiality Provision, Singleton must allege facts connecting Saylor and DiMarco's conduct under color of state

[216] *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974).
[217] R. Doc. 21 at ¶ 12.
[218] *See West v. Atkins*, 487 U.S. 42, 48 (1988) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)).

law to an error or omission in his voter registration, and that this error or omission had no material basis in state law. Further, those facts must be sufficient to surmount qualified immunity at the pleading stage. This means Singleton must allege facts sufficient to plausibly show that DiMarco and Saylor's conduct under the color of state law (1) violated the Materiality Provision and (2) was not objectively reasonable in light of clearly established law.[219]

To survive a motion to dismiss on his § 1983 damages claim against the Board, Singleton must plead facts sufficient to "plausibly establish that '(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation" of the Materiality Provision.[220] To properly plead an official policy, Singleton must allege either "(1) 'written policy statements, ordinances, or regulations'; (2) 'a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy'; or (3) 'a single decision . . . when the official or entity possessing a final policymaking authority for an action performed the specific act that forms the basis of the § 1983 claim.'"[221]

To establish an official policy under the "widespread practice" rule, Singleton must "do more than describe the incident that gave rise to his injury."[222] Singleton must allege specific facts, which, taken as true, attest to a practice "so persistent and widespread as to practically have the force of law."[223]

---

[219] *See Blackwell v. Laque*, 275 F. App'x 363, 366 (5th Cir. 2008).
[220] *Merriott v. City of Bossier City*, 179 F.4th 393, 412 (5th Cir. 2026) (quoting *St. Maron Props., L.L.C. v. City of Houston*, 78 F.4th 754, 760 (5th Cir. 2023)).
[221] *Id.* (quoting *St. Maron Props.*, 78 F.4th at 760).
[222] *Ratliff v. Aransas County*, 948 F.3d 281, 285 (5th Cir. 2020) (quoting *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018)).
[223] *Peña*, 879 F.3d at 622 (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)).

To establish municipal liability against the Board on a failure-to-train theory, Singleton must allege "(1) that the [Board's] training procedures were inadequate, (2) that the [Board] was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused the violation[] in question."[224]

The Court will grant Plaintiffs leave to amend Count V under Rule 15(a)(2) as to Singleton's individual capacity claims against DiMarco and Saylor and his *Monell* claim against the Board.[225]

## VII. Count I: The Voter Plaintiffs will be allowed to amend their § 1983 Fourteenth Amendment denial of the right to vote claims against Saylor, DiMarco, and Board.

The Voter Plaintiffs bring a § 1983 damages claim against defendants Saylor and DiMarco and a *Monell* claim against the Jefferson Parish Board of Election Supervisors, alleging poll workers issued provisional ballots to them at the 641 Compromise Street polling station, rather than permitting them to vote by machine, which deprived the Voter Plaintiffs of their right to vote, as protected under the Equal Protection and Due Process Clauses of the Fourteenth Amendment.[226]

To state a claim under 42 U.S.C. § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."[227] The Constitution of the United States, by way of the Equal Protection Clause of the Fourteenth Amendment, "protects the right of all qualified citizens to vote, in state as well as in

---

224 *Ratliff*, 948 F.3d at 285 (quoting *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 170 (5th Cir. 2010)).
225 *See* Fed. R. Civ. P. 15(a)(2).
226 R. Doc. 21 at ¶¶ 44-47. The Amended Complaint does not specify which plaintiffs bring which claims, and there is some ambiguity as to which plaintiffs were actually issued provisional ballots during the May 16 election. *See* R*id*. at ¶¶ 12-16, 34. The Court assumes these claims are brought by three of the four plaintiffs who allege they were unable to cast a ballot: Bates, Gregory, and Phillips.
227 *West v. Atkins*, 487 U.S. 42, 48 (1988) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)).

federal elections."[228] The Supreme Court has held it is "unquestionable" that this protection extends to "the right to have one's vote counted."[229]

The Equal Protection Clause protects against "the 'unlawful administration by state officers of a state statute fair on its face, resulting in unequal application to those who are entitled to be treated alike.'"[230] In such a "class-of-one" claim, the plaintiff must establish "(1) he was 'intentionally treated differently from others similarly situated' and (2) there was no rational basis for any such difference."[231] A "class-of-one" is a term of art and does not necessarily indicate the class must be comprised of a single individual. Multiple individuals can form a class-of-one. The number of individuals in a class "is immaterial for equal protection analysis."[232] "Unlike systematically discriminatory laws, isolated events that adversely affect individuals are not presumed to be a violation of the equal protection clause."[233]

The Amended Complaint alleges that Rhonda Saylor, Dennis DiMarco, and the Jefferson Parish Board of Election Supervisors, acting under color of state law, deprived Bates, Gregory, and Phillips of their constitutionally-protected right to vote when poll workers issued provisional ballots to them during the May 16 election, because this was a state election and, they argue, "provisional ballots apply exclusively to federal elections."[234] The Amended Complaint alleges the "misapplication" of provisional ballots "was a recurring practice affecting at least ten voters across multiple precincts."[235]

---

[228] *Reynolds v. Sims*, 377 U.S. 533, 554 (1964).
[229] *United States v. Mosley*, 238 U.S. 383, 386 (1915).
[230] *Wilson v. Birnberg* 667 F.3d 591, 99 (5th Cir. 2012) (quoting *E & T Realty v. Strickland*, 830 F.2d 1107, 1112-13 (11th Cir. 1987)).
[231] *Wilson v. Birnberg* 667 F.3d 591, 599 (5th Cir. 2012) (quoting *Whiting v. Univ. of So. Miss.*, 451 F.3d 339, 348 (5th Cir. 2006)).
[232] *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 n.* (1999).
[233] *Gamza v. Aguirre*, 619 F.2d 449, 453 (1980).
[234] R. Doc. 21 at ¶ 45.
[235] *Id.*at ¶ 34.

The Voter Plaintiffs allege their equal protection rights were deprived when they were not allowed to vote by machine, both when they were issued the provisional ballot, and when, once issued provisional ballots, their ballots were left uncounted.[236] 52 U.S.C. § 21082 provides procedures for the application of provisional ballots to federal elections. Plaintiffs cite this statute for the proposition that provisional ballots "apply exclusively to federal elections."[237] That federal statute does not prohibit states from using provisional affidavit ballots;[238] under Louisiana law, however, provisional ballots are not used in state elections.[239]

Defendants argue Count I should be dismissed for three reasons: first, because Plaintiffs have not pleaded a state law or pattern of state action intended to systematically deny equality in voting as required under *Gamza v. Aguirre* to state an equal protection claim;[240] second, because Plaintiffs have not pointed to any violation of clearly established law necessary to surmount a qualified immunity defense against Saylor and DiMarco;[241] third, because Plaintiffs do not plausibly allege the use of provisional ballots was an official policy of the Jefferson Parish Board of Election Supervisors, as required under *Monell*.[242]

Plaintiffs argue the Amended Complaint alleges a systemic practice that denies equality in voting as required by *Gamza*.[243] In *Gamza*, a candidate for school board lost his election due to an apparently unintentional administrative error causing a voting

---

[236] *Id.* 21 at ¶¶ 44-47. Elsewhere, the Amended Complaint alleges Gregory was "not informed of her right to a provisional ballot. *Id.* at ¶ 14.
[237] *Id.* a ¶ 32.
[238] 52 U.S.C. § 21082.
[239] *See* La. R.S. § 18:1352(B) and § 18:566.
[240] R. Doc. 23-1 at p. 14. *See Gamza v. Aguirre*, 619 F.2d 449 (5th Cir 1980).
[241] R. Doc. 23-1 at pp. 16-17.
[242] R. Doc. 23-1 at pp. 25-26.
[243] R. Doc. 24 at p. 6.

machine miscount; he and four voters sued the victorious candidate, alleging the machine error denied them their constitutional right to have their votes counted as secured by the Equal Protection Clause.[244] The issue before the Fifth Circuit was whether the alleged violation indeed deprived the plaintiffs of any constitutionally-protected right.[245] The Fifth Circuit noted that the right to vote "is not absolute" and should be understood as the right of a person "to vote on an equal basis with other voters."[246] As such, the Fifth Circuit held:

> Unlike systematically discriminatory laws, isolated events that adversely affect individuals are not presumed to be a violation of the equal protection clause . . . . The unlawful administration by state officers of a non-discriminatory state law 'resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination.'[247]

Accordingly, the Fifth Circuit ordered the district court to dismiss the plaintiffs' suit because, absent evidence the "alleged maladministration of the local election procedures was attended by the intention to discriminate against the affected voters" the *Gamza* action did not encompass "a denial of equal protection of the laws."[248]

Defendants argue *Gamza* forecloses Plaintiffs § 1983 claim because "the allegations amount, at most, to alleged election-administration errors arising from [a] single election."[249]

Plaintiffs counter they have alleged "more than a one-off administrative error."[250] As regards Saylor and DiMarco's qualified immunity defense, Plaintiffs argue that Saylor

---

[244] *Gamza v. Aguirre*, 619 F.2d 449, 451 (5th Cir. 1980).
[245] *Id.* at 452.
[246] *Id.* at 453 (quoting *City of Mobile v. Bolden*, 446 U.S. 55, 78 (1980)).
[247] *Id.* (quoting *Snowden v. Hughes*, 321 U.S. 1, 8 (1944)).
[248] *Id.* at p. 454.
[249] R. Doc. 23-1 at p. 15.
[250] R. Doc. 24 at p. 6.

and DiMarco's "systematic application of a federal-only ballot procedure" to a state election is sufficient to surmount qualified immunity at the pleading stage.[251] As regards the *Monell* claim, Plaintiffs argue the Amended Complaint alleges the Board's supervisors allowed its commissioners to use provisional ballots without regard to whether the election was a federal contest.[252] At oral argument, Plaintiffs argued these allegations included the Board's alleged failure to train its poll workers to use the correct procedures.[253]

The Amended Complaint, as written, does not state an equal protection claim. Under *Gamza* "an element of intentional or purposeful discrimination" is required to transform an event that adversely affects individuals into a justiciable equal protection claim.[254] The Voter Plaintiffs must allege intentional discrimination, either that they were intentionally discriminated against due to their membership in a protected class, or that they were intentionally treated differently from others similarly situated, as required for a "class of one" equal protection claim.[255]

To survive a motion to dismiss, the Voter Plaintiffs must allege (1) a violation of rights secured by the constitution of the United States, as presented above; and (2) demonstrate that that the alleged deprivation was committed by a person acting under color of state law.[256] Further, to survive a motion to dismiss on their individual-capacity claims, the Voter Plaintiffs must allege facts connecting Saylor and DiMarco to the deprivation of their voting rights, and those facts must be sufficient to surmount qualified immunity at the pleading stage. This means the Voter Plaintiffs must allege facts sufficient

---

[251] *Id.* at p. 7.
[252] R. Doc. 24 at p. 6; R. Doc. 21 at ¶ 46.
[253] *See* R. Doc. 21 at ¶ 46.
[254] *See Gamza v. Aguirre*, 619 F.2d 449, 453 (1980).
[255] *See Wilson v. Birnberg* 667 F.3d 591, 599 (5th Cir. 2012).
[256] *See West v. Atkins*, 487 U.S. 42, 48 (1988) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)).

to plausibly show that DiMarco and Saylor's conduct under the color of state law (1) violated a constitutional right, and (2) was not objectively reasonable in light of clearly established law.[257] To survive a motion to dismiss on their *Monell* claims, the Voter-Plaintiffs must plead facts sufficient to "plausibly establish that '(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right.'"[258] To properly plead an official policy, the Voter Plaintiffs must allege either "(1) 'written policy statements, ordinances, or regulations'; (2) 'a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy'; or (3) 'a single decision . . . when the official or entity possessing a final policymaking authority for an action performed the specific act that forms the basis of the § 1983 claim.'"[259]

To establish an official policy under the "widespread practice" route, the Voter Plaintiffs must "do more than describe the incident that gave rise to [their] injury."[260] The Voter Plaintiffs must allege specific facts, which, taken as true, attest to a practice "so persistent and widespread as to practically have the force of law."[261]

To establish municipal liability against the Board on a failure-to-train theory, the Voter Plaintiffs must allege "(1) that the [Board's] training procedures were inadequate, (2) that the [Board] was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused the violations in question."[262]

---

[257] *See Blackwell v. Laque*, 275 F. App'x 363, 366 (5th Cir. 2008).
[258] *Merriott v. City of Bossier City*, 179 F.4th 393, 412 (5th Cir. 2026) (quoting *St. Maron Props., L.L.C. v. City of Houston*, 78 F.4th 754, 760 (5th Cir. 2023)).
[259] *Id.* (quoting *St. Maron Props., L.L.C. v. City of Houston*, 78 F.4th 754, 760 (5th Cir. 2023)).
[260] *Ratliff v. Aransas County*, 948 F.3d 281, 285 (5th Cir. 2020) (quoting *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018)).
[261] *Peña*, 879 F.3d at 622 (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)).
[262] *Ratliff*, 948 F.3d at 285 (quoting *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 170 (5th Cir. 2010)).

The court will grant Plaintiffs leave to amend their complaint under Rule 15(a)(2) as to the Voter Plaintiffs' individual capacity claims under Count I against Saylor and DiMarco and their *Monell* claim against the Board.[263]

Beyond the single mention of the Due Process Clause in the Amended Complaint, neither party raises or briefs Count I as a due process claim, nor does the Amended Complaint include factual allegations that the Voter Plaintiffs were deprived a liberty or property interest. Accordingly, the Court will not analyze Count I as a due process claim.[264] To the extent Plaintiffs bring Count I as due process claim, it is dismissed with prejudice and Plaintiffs will not be granted leave to amend.

## VIII. Count III: Weathersby will be allowed to amend his § 1983 Fourteenth Amendment denial of access to courts claim against DiMarco and Saylor.

Plaintiff Weathersby brings a Section 1983 damages claim against Defendants DiMarco and Saylor alleging they denied him access to the courts in violation of the Due Process Clause of the Fourteenth Amendment.[265]

To state a claim under 42 U.S.C. § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."[266] "The right of access to the courts is basic to our system of government, and it is well established today that it is one of the fundamental rights protected by the Constitution."[267] A backward-looking access to courts claim requires the plaintiff to identify: "(1) a nonfrivolous underlying claim; (2) an official act that frustrated the litigation of that

---

[263] *See* FED. R. CIV. P. 15(a)(2).
[264] To the extent Plaintiffs do attempt to assert a Due Process claim under Count I, the Amended Complaint fails to state a cause of action.
[265] R. Doc. 21 at ¶¶ 51-54.
[266] *West v. Atkins*, 487 U.S. 42, 48 (1988) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)).
[267] *Ryland v. Shapiro*, 708 F.2d 967, 971 (5th Cir. 1983).

claim; and (3) a remedy that is not otherwise available in another suit that may yet be brought."[268] Access-to-courts claims derive from "an officially-created impediment to the ability to file an action" and do not encompass "post-filing [discovery] violation[s]."[269]

Defendants argue that Count III must be dismissed because the remedy Weathersby identifies in the present action is different from the remedy Weathersby sought in his state court election contest.[270] Namely, in the state court suit, Weathersby sought to contest the election itself, whereas now he seeks damages.[271] So Defendants argue, "Weathersby brought his election-contest suit, sought the available relief, and received a final judgment. Recasting that result as the loss of a 'merits determination' does not identify the otherwise-unavailable remedy [an access to courts claim] requires[.]"[272] Defendants further argue that Weathersby has not alleged any official misconduct cognizable as frustration of litigation for access-to-courts claims purposes.[273]

Weathersby counters his "alleged injury is the permanent loss of the opportunity to present a complete record through Louisiana's expedited election-contest procedure."[274]

Access-to-courts claims derive from "an officially-created impediment to the ability to file an action" and do not encompass "post-filing [discovery] violation[s]."[275] In *Foster v. City of Lake Jackson*, the Fifth Circuit reversed a denial of qualified immunity on the basis that a municipality's post-filing discovery violations did not impede a

[268] *Waller v. Hanlon*, 922 F.3d 590, 602 (5th Cir. 2019).
[269] *Foster v. City of Lake Jackson*, 28 F.3d 425, 430 (5th Cir. 1994).
[270] R. Doc. 23-1 at p. 20.
[271] *Id.*
[272] *Id.* at 20-21.
[273] *Id.* at 21. *See Foster v. City of Lake Jackson*, 28 F.3d 425 (5th Cir. 1994)
[274] R. Doc. 24 at p. 10.
[275] *Foster v. City of Lake Jackson*, 28 F.3d 425, 430 (5th Cir. 1994).

plaintiff's access to courts.[276] In that case, the plaintiffs had previously sued a municipal defendant in state court alleging its failure to maintain a traffic light resulted in their son's death.[277] After discovery, the plaintiffs and the municipal defendant reached a settlement and the case was dismissed.[278] Subsequently, the plaintiffs brought a § 1983 action in federal court alleging that, during the course of the prior state suit, municipal officials "conspired to deny them access to the courts by concealing and suppressing evidence during discovery, causing them to settle for less than they might have had they obtained the evidence in question."[279] The Fifth Circuit ruled that the defendants were entitled to qualified immunity, because an access-to-courts claim only attaches to a plaintiff's ability to *file* an action, and therefore even "reprehensible" post-filing discovery conduct does not violate clearly established law.[280]

Weathersby filed his state court suit on May 26, 2026.[281] *Foster* bars recovery relating to all of Weathersby's factual allegations against Saylor and DiMarco that occurred after that date. The only factual allegation of conduct occurring pre-filing—and, accordingly, the only factual allegation with the potential to violate clearly established law—is Saylor and DiMarco's alleged election night statement to Weathersby suggesting he make a public records request for election data.[282] Weathersby alleges Saylor and DiMarco did not notify him of La. R.S. 18:1411, which entitles a party to an objection to candidacy to certain expedited discovery procedures.[283] Weathersby further alleges that

---

[276] *See id.*
[277] *Id.* at 427.
[278] *Id.*
[279] *Id.*
[280] *Id.* at 430.
[281] *See* Petition Contesting Election, *Weathersby et al. v. Glaser et al.*, No. 876-128 (24th JDC May 26, 2026).
[282] R. Doc. 21 at ¶ 37.
[283] *Id.*

DiMarco and Saylor were aware that a public records request would take longer than the state law filing deadline for an objection to candidacy.[284]

"When confronted with a qualified immunity defense at the pleadings stage, the plaintiff must plead 'facts which, if proved would defeat [the] claim of qualified immunity.'"[285] "It is the plaintiff's burden to demonstrate that qualified immunity is inappropriate."[286] Weathersby's factual allegations against Saylor and DiMarco do not meet this burden. It is unclear how DiMarco and Saylor's statement that Weathersby could make a public records request violated clearly established law. The only case Weathersby cites to show that this is official misconduct is *Ryland v. Shapiro*, in which a state prosecutor murdered a woman and then conspired with other city officials over the course of a year to have her death ruled a suicide.[287] While a prior case need not be "directly on point" to surmount qualified immunity, the contours of a right must be sufficiently clear that a reasonable official would have understood that what he is doing violates that right.[288] Failing to notify a candidate of a precise discovery mechanism available in an election contest—a mechanism whose source is found in publicly-accessible state law—is simply not in the same universe as *Ryland*.

To survive a motion to dismiss, Weathersby must allege (1) a violation of rights secured by the constitution of the United States, as presented above; and (2) demonstrate that that the alleged deprivation was committed by a person acting under color of state law.[289] Further, to survive a motion to dismiss on his individual-capacity claims,

---

[284] *Id.*
[285] *Guerra v. Castillo*, 82 F.4th 278, 285 (5th Cir. 2023) (quoting *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019)).
[286] *Terwilliger v. Reyna*, 4 F.4th 270, 280 (5th Cir. 2021).
[287] *Ryland v. Shapiro*, 708 F.2d 967, 969 (1983).
[288] *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).
[289] *See West v. Atkins*, 487 U.S. 42, 48 (1988) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)).

Weathersby must allege pre-filing[290] conduct of DiMarco and Saylor which, taken as true, would be sufficient to surmount a qualified immunity defense at the pleading stage. Weathersby must allege facts sufficient to plausibly show that DiMarco and Saylor's conduct under the color of state law (1) violated a constitutional right, and (2) was not objectively reasonable in light of clearly established law.[291]

The Court will grant Plaintiffs leave to amend their complaint under Rule 15(a)(2) as to Count III.[292]

## IX. Count IV: Weathersby will be allowed to amend his § 1983 Procedural Due Process claim against DiMarco and Saylor.

Plaintiff Weathersby brings a § 1983 damages claim Defendants DiMarco and Saylor alleging they deprived him of a protected property interest both in his election contest cause of action and in "the specific procedural entitlement to expedited discovery under La. R.S. 18:1411[.]"[293]

The Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law."[294] There are two forms of Due Process Clause claims, procedural and substantive. "A procedural due process claim turns on '(1) whether there exists a liberty or property interest which has been interfered with by the State,' and (2) whether the procedures attendant upon that deprivation were constitutionally sufficient.'"[295] If the plaintiff has no "cognizable interest in liberty or property" then there is nothing "subject to Due Process protections[.]"[296] And where there

---

[290] *See Foster v. City of Lake Jackson*, 28 F.3d 425, 430 (5th Cir. 1994).
[291] *See Blackwell v. Laque*, 275 F. App'x 363, 366 (5th Cir. 2008).
[292] *See* FED. R. CIV. P. 15(a)(2).
[293] R. Doc. 21 at ¶¶ 55-57.
[294] U.S. CONST. amend. XIV, § 1.
[295] *James v. Cleveland Sch. Dist.*, 45 F.4th 860, 864 (5th Cir. 2022) (quoting *Richardson v. Tex. Sec'y of State*, 978 F.3d 220, 228-29 (5th Cir. 2020)).
[296] *Id.* (quoting *Hampton Co. Nat. Sur., LLC v. Tunica County*, 543 F.3d 221, 225 (5th Cir. 2008)) (citation modified).

is such an interest, its "deprivation by state action . . . is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law."[297] Accordingly, once a court determines the Due Process Clause applies, it must then determine whether the process provided to the plaintiff was "constitutionally adequate."[298] An access to courts claim may be framed as a procedural due process claim.[299]

Defendants argue Count IV should be dismissed because Weathersby can have no cognizable property interest in the expedited discovery procedures of La. R.S. 18:1411 as the Amended Complaint suggests.[300] Defendants argue further that, even if the Court were to consider the entitlements of La. R.S. 18:1411 to be property, then Plaintiffs do not allege they were deprived of the entitlement to property without adequate process.[301] Defendants argue, finally, that Count IV, like Count III, has "an insurmountable qualified immunity problem" in that Weathersby cannot point to any violation of clearly established law on the part of Saylor and DiMarco.[302] In Opposition, Weathersby states Count IV is only pleaded in the alternative to Count III, and that he does not "rely on the discovery mechanism in isolation as the property interest."[303]

While "a cause of action is a species of property" protected by the Fourteenth Amendment's due process guarantee,[304] "[p]rocess is not an end in itself."[305] As such, "a

[297] *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (citing *Parratt v. Taylor*, 451 U.S. 527, 537 (1981)).
[298] *Blackledge v. City of Hattiesburg*, 809 F. Supp. 3d 443, 463 (S.D. Miss. 2025) (citing *Cleveland Bd. of Educ. V. Loudermill*, 470 U.S. 532, 541 (1985)).
[299] *See Christopher v. Harbury*, 536 U.S. 403, 415 n. 12 (2002) (stating that the Due Process Clause of the Fourteenth Amendment is one of multiple potential constitutional grounds for an access to courts claim).
[300] R. Doc. 23-1 at p. 22.
[301] *Id.*
[302] *Id.* at 23.
[303] R. Doc. 24 at p. 11.
[304] *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982).
[305] *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

procedural right can not, in and of itself, give rise to a property interest."[306] Accordingly, to the extent Count IV asserts the specific discovery procedure of La. R.S. 18:1411 as a property interest, Weathersby has failed to state a claim because La. R.S. 18:1411 is not itself a protected property interest.

Consequently, to survive dismissal, Weathersby's asserted property interest must be the election contest cause of action itself.

To survive a motion to dismiss, Weathersby must allege (1) a violation of rights secured by the constitution of the United States, as presented above; and (2) demonstrate that that the alleged deprivation was committed by a person acting under color of state law.[307] Further, to survive a motion to dismiss on his individual-capacity claims, Weathersby must allege pre-filing[308] conduct of DiMarco and Saylor which, taken as true, would be sufficient to surmount a qualified immunity defense at the pleading stage. Weathersby must allege facts sufficient to plausibly show that DiMarco and Saylor's conduct under the color of state law (1) violated a constitutional right, and (2) was not objectively reasonable in light of clearly established law.[309]

The Court will grant Plaintiffs leave to amend their complaint under Rule 15(a)(2) as to Count IV.[310]

---

[306] *Conroe Creosoting Co. v. Montgomery Cnty.*, 249 F.3d 337, 341 (5th Cir. 2001).
[307] *See West v. Atkins*, 487 U.S. 42, 48 (1988) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)).
[308] *See Foster v. City of Lake Jackson*, 28 F.3d 425, 430 (5th Cir. 1994).
[309] *See Blackwell v. Laque*, 275 F. App'x 363, 366 (5th Cir. 2008).
[310] *See* FED. R. CIV. P. 15(a)(2).

### X. Count V: The Voter Plaintiffs will be allowed to amend their § 1983 claims of violation of the Materiality Provision of the Civil Rights Act of 1964 against Saylor, DiMarco, and the Board; the Voter Plaintiffs will not be given leave to amend any claims against Landry under this count.

The Court addressed Singleton's claim under Count V in Section VI above. Only the Voter Plaintiffs claims under Count V remain to be addressed.[311] The Voter Plaintiffs allege that all Defendants[312] violated the Materiality Provision of the Civil Rights Act of 1964, 52 U.S.C. § 10101(a)(2)(B), by issuing provisional ballots for the May 16 election.[313] They seek compensatory damages, declaratory relief, and attorneys' fees.[314]

Under 52 U.S.C. § 10101(a)(2)(B), known as the Materiality Provision of the Civil Rights Act of 1964, it is unlawful for any person acting under color of state law to "deny the right of any individual to vote in any election because of an error or omission on any record or paper relating to any application, registration or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election."[315] The Materiality Provision is enforceable through 42 U.S.C. § 1983.[316]

Defendants argue Count V should be dismissed as to the Voter Plaintiffs because the Materiality Provision "reaches only 'paperwork used in the voter qualification process' and 'does not cover records or papers provided during the vote-casting stage.'"[317] Since

---

[311] The Amended Complaint makes no allegation that Weathersby himself was denied the opportunity to vote. *See* R. Doc. 21 at ¶ 16. To the extent Weathersby brings any claims under Count V, they will be dismissed with prejudice and Weathersby will not be given leave to amend.
[312] To the extent that the Voter Plaintiffs bring Count V against Landry, their claims will be dismissed with prejudice and the Voter Plaintiffs will not be given leave to amend.
[313] R. Doc. 21 at ¶¶ 58-60. The Amended Complaint describes this as a claim under the Voting Rights Act, but the only provision they cite, 52 U.S.C. § 10101(a)(2)(B), was enacted under the Civil Rights Act of 1964. *See Vote.Org v. Callanen*, 89 F.4th 459, 473 (5th Cir. 2023).
[314] *Id.*
[315] 52 U.S.C. § 10101.
[316] *Vote.Org*, 89 F.4th at 475 .
[317] R. Doc. 23-1 at p. 24 (quoting *United States v. Paxton*, 148 F.4th 335, 340 (5th Cir. 2025)).

the Amended Complaint alleges the Voter Plaintiffs all were "already qualified, registered voters" on election day, Defendants argue their alleged injuries do not come within the scope of the Materiality Provision.[318] Defendants argue the Materiality Provision "does not federalize every alleged failure to process a registration application."[319]

Of the Voter Plaintiffs, Bates alleges she was denied voting machine access and given conflicting and incorrect information by poll workers.[320] Gregory alleges she was denied voting machine access, told she could not vote, and not informed of her right to a provisional ballot.[321] Gregory alleges she was ultimately permitted to cast a ballot, but candidate Weathersby's name did not appear on the ballot she received despite the fact that she resided in District 1.[322] Phillips alleges he was denied voting machine access and given conflicting and incorrect information by poll workers.[323]

In implementing the Materiality Provision, the Fifth Circuit has focused on substantive voter attributes at the time of voter registration, such as residence, age, and criminal record. "They are distinct from rules governing the conduct of elections . . . ."[324] The analysis centers on whether the state statute regarding the attribute meaningfully corresponds to "legitimate interests the state claims to have been advancing."[325] The Materiality Provision does not apply to the governance of the voting process.

To survive a motion to dismiss on their § 1983 damages claims against DiMarco and Saylor in Count V, the Voter Plaintiffs must allege (1) a violation of rights secured by

---

[318] *Id.*. *See* R. Doc. 21 at p. 31 ¶ 59.
[319] R. Doc. 23-1 at p. 24.
[320] R. Doc. 21 at ¶ 13.
[321] *Id.* at ¶ 14.
[322] *Id.*
[323] *Id.* at ¶ 15.
[324] *La Union del Pueblo Entero v. Abbott*, 705 F. Supp. 3d 725, 751 (W.D. Tex. 2023), *rev'd sub nom. United States v. Paxton*, 148 F.4th 335 (5th Cir. 2025).
[325] *Paxton*, 148 F.4th at 341 (quoting *Vote.Org v. Callanen*, 89 F.4th 459, 485 (5th Cir. 2023)).

the Materiality Provision, as discussed above; and (2) demonstrate that that the alleged deprivation was committed by a person acting under color of state law.[326] In the context of the Materiality Provision, the Voter Plaintiffs must allege facts connecting Saylor and DiMarco's conduct under color of state law to an error or omission in registering them to vote, and that these errors or omissions had no material basis in state law. Further, those facts must be sufficient to surmount qualified immunity at the pleading stage. This means the Voter-Plaintiffs must allege facts sufficient to plausibly show that DiMarco and Saylor's conduct under the color of state law (1) violated the Materiality Provision and (2) was not objectively reasonable in light of clearly established law.[327]

To survive a motion to dismiss on their *Monell* claims against the Board, the Voter Plaintiffs must plead facts sufficient to "plausibly establish that '(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation" of the Materiality Provision.[328] To properly plead an official policy, the Voter Plaintiffs must allege either "(1) 'written policy statements, ordinances, or regulations'; (2) 'a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy'; or (3) 'a single decision . . . when the official or entity possessing a final policymaking authority for an action performed the specific act that forms the basis of the § 1983 claim.'"[329]

To establish an official policy under the "widespread practice" route, the Voter Plaintiffs must "do more than describe the incident that gave rise to [their] injury."[330] The

---

[326] *See West v. Atkins*, 487 U.S. 42, 48 (1988) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)).
[327] *See Blackwell v. Laque*, 275 F. App'x 363, 366 (5th Cir. 2008).
[328] *Merriott v. City of Bossier City*, 179 F.4th 393, 412 (5th Cir. 2026) (quoting *St. Maron Props., L.L.C. v. City of Houston*, 78 F.4th 754, 760 (5th Cir. 2023)).
[329] *Id.* (quoting *St. Maron Props.*, 78 F.4th at 760).
[330] *Ratliff v. Aransas County*, 948 F.3d 281, 285 (5th Cir. 2020) (quoting *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018)).

Voter Plaintiffs must allege specific facts, which, taken as true, attest to a practice "so persistent and widespread as to practically have the force of law."[331]

To establish municipal liability against the Board on a failure-to-train theory, the Voter Plaintiffs must allege "(1) that the [Board's] training procedures were inadequate, (2) that the [Board] was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused the violations in question."[332]

The Court will grant Plaintiffs leave to amend Count V under Rule 15(a)(2) as to the Voter Plaintiffs' individual capacity claims against DiMarco and Saylor and their *Monell* claims against the Board.[333]

## XI. Count VII: All Plaintiffs will be allowed to amend their request for an injunction against further use of the DRE voting system.

All plaintiffs allege that, as applied to them, the absence of a verification system in Louisiana's DRE voting system deprives them of their right to have their votes counted as protected by the Fourteenth Amendment's due process guarantee.[334] They seek an injunction directing Landry to require a voting system that preserves individually verifiable ballot records for future City of Kenner elections and a declaratory judgment that the May 16, 2026 election violated their rights under the Due Process Clause of the Fourteenth Amendment.[335] As the Court has found above in Sections III.C and IV, Plaintiffs have standing to seek a prospective injunction under this count; however, sovereign immunity bars the Plaintiffs from seeking a backward-looking declaratory judgment against Landry under this count.

---

331 *Peña*, 879 F.3d at 622 (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)).
332 *Ratliff*, 948 F.3d at 285 (quoting *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 170 (5th Cir. 2010)).
333 *See* FED. R. CIV. P. 15(a)(2).
334 R. Doc. 21 at ¶¶ 64-71.
335 *Id.* at ¶¶ 70-71.

To survive a motion to dismiss, Plaintiffs must state a claim as to how the DRE voting system violates their rights under either the equal protection clause, the due process clause, or both.

Since Plaintiffs have alleged neither that they are members of a protected class, nor that the DRE voting system discriminates on the basis of a protected characteristic, they must allege that the DRE voting system violates their equal protection rights under a "class-of-one" theory. The Equal Protection Clause protects against "the 'unlawful administration by state officers of a state statute fair on its face, resulting in unequal application to those who are entitled to be treated alike.'"[336] In such a "class-of-one" claim, the plaintiff must establish "(1) he was 'intentionally treated differently from others similarly situated' and (2) there was no rational basis for any such difference."[337] "Unlike systematically discriminatory laws, isolated events that adversely affect individuals are not presumed to be a violation of the equal protection clause."[338] To survive a motion to dismiss, Plaintiffs must allege that the DRE voting system treats them differently from others similarly situated and that there is no rational basis for the difference. This allegation, taken as true, must be able to surmount the presumption that isolated events adversely affecting individuals do not violate the equal protection clause.

Due process claims come in two forms: procedural and substantive. "A procedural due process claim turns on '(1) whether there exists a liberty or property interest which has been interfered with by the State,' and (2) whether the procedures attendant upon that deprivation were constitutionally sufficient.'"[339] If the plaintiff has no "cognizable

---

[336] *Wilson v. Birnberg* 667 F.3d 591, 99 (5th Cir. 2012) (quoting *E & T Realty v. Strickland*, 830 F.2d 1107, 1112-13 (11th Cir. 1987)).
[337] *Id.* (quoting *Whiting v. Univ. of So. Miss.*, 451 F.3d 339, 348 (5th Cir. 2006)).
[338] *Gamza v. Aguirre*, 619 F.2d 449, 453 (1980).
[339] *James v. Cleveland Sch. Dist.*, 45 F.4th 860, 864 (5th Cir. 2022) (quoting *Richardson v. Tex. Sec'y of State*, 978 F.3d 220, 228-29 (5th Cir. 2020)).

interest in liberty or property" then there is nothing "subject to Due Process protections[.]"[340] And where there is such an interest, its "deprivation by state action . . . is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law."[341] Accordingly, once a court determines the Due Process Clause applies, it must then determine whether the process provided to the plaintiff was "constitutionally adequate."[342] To survive a motion to dismiss under a procedural due process theory, Plaintiffs must identify either a liberty or property interest, identify what process was due to protect that interest, and allege that they were deprived of that interest without the their constitutional due.

To establish a Fourteenth Amendment substantive due process claim, the plaintiff must (1) "allege a deprivation of a constitutionally protected right"; and (2) "demonstrate that the government action is not 'rationally related to a legitimate governmental interest.'"[343] Courts analyze substantive due process claims by asking whether the behavior of the state actor is "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."[344] To survive a motion to dismiss under a substantive due process theory, Plaintiffs must allege that a government actor deprived them of a constitutionally-protected right, that the government action was not rationally related to a legitimate governmental interest, and that the government action was so outrageous that it shocks the conscience.

---

[340] *Id.* (quoting *Hampton Co. Nat. Sur., LLC v. Tunica County*, 543 F.3d 221, 225 (5th Cir. 2008)) (citation modified).
[341] *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (citing *Parratt v. Taylor*, 451 U.S. 527, 537 (1981)).
[342] *Blackledge v. City of Hattiesburg*, 809 F. Supp. 3d 443, 463 (S.D. Miss. 2025) (citing *Cleveland Bd. of Educ. V. Loudermill*, 470 U.S. 532, 541 (1985)).
[343] *Cripps v. Louisiana Dep't of Agric. & Forestry*, 819 F.3d 221 (5th Cir. 2016) (quoting *Mikeska v. City of Galveston*, 451 F.3d 376, 379 (5th Cir. 2006)).
[344] *Id.* (quoting *Conroe Creosoting Co. v. Montgomery Cnty.*, 249 F.3d 337, 341 (5th Cir. 2001)).

The Court will grant Plaintiffs leave to amend Count VII under Rule 15(a)(2).[345]

## XII. The Court will grant Plaintiffs leave to amend Counts I, II, III, IV, V, and VII; the Court will deny Plaintiffs leave to amend Singleton's claim for prospective relief in Count II and for any claims against Landry in Count V.

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that the "court should freely give leave [to amend] when justice so requires."[346] Rule 15(a)'s liberal amendment policy places the grant or denial of leave to amend within the district court's discretion.[347] With that said, Rule 15(a) "evinces a bias in favor of granting leave to amend," and thus leave must be freely given in the absence of a "substantial reason to deny the leave to amend."[348] The five relevant factors courts consider in determining whether leave to amend is proper are: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by previous amendments, (4) undue prejudice to the opposing party, and (5) futility of the amendment.[349] "And, while leave to amend 'is to be freely given, that generous standard is tempered by the necessary power of a district court to manage a case.'"[350]

Because all parties agree that Singleton's voting rights have been unambiguously restored, and because sovereign immunity shields Landry from any retrospective relief Singleton may seek to recover from her, the Court finds that amendment to Singleton's claims against Landry in Count II and Count V would be futile. Singleton will not be allowed to amend these counts. The Court will grant the remaining Plaintiffs leave to amend Counts I, III, IV, V, and VII.

---

345 *See* FED. R. CIV. P. 15(a)(2).
346 FED. R. CIV. P. 15(a)(2).
347 *Foman v. Davis*, 371 U.S. 178, 182 (1962).
348 *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597-98 (5th Cir.1981).
349 *Gregory v. Mitchell*, 634 F.2d 199, 203 (5th Cir. 1981).
350 *Neutron Depot, L.L.C. v. Bankrate, Inc.*, 798 F. App'x. 803, 808 (5th Cir. 2020) (citing *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003)).

Accordingly,

## CONCLUSION

**IT IS ORDERED** that Defendants' Motion is **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss based on Plaintiff's lack of jurisdiction under 28 U.S.C. § 1344 is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss based on Plaintiff's lack of jurisdiction under the *Rooker-Feldman* doctrine is **DENIED**.

**IT IS FURTHER ORDERED** that the Motion to Dismiss is **DENIED** as to prospective relief in Count VII.[351]

**IT IS FURTHER ORDERED** that, to the extent Count VII seeks a backward-looking declaratory judgment against Landry, the Motion to Dismiss is **GRANTED**.[352] Plaintiffs' claim seeking a backward-looking declaratory judgment against Landry in Count VII is dismissed with prejudice.

**IT IS FURTHER ORDERED** the Motion to Dismiss is **GRANTED** as to Singleton's claims against Landry in Count II and all Plaintiffs' claims against Landry in Count V. Plaintiffs' claims against Landry in Count II and Count V are dismissed with prejudice; Plaintiffs will not be given leave to amend these counts.

**IT IS FURTHER ORDERED** that Plaintiffs are granted leave to file an amended complaint addressing the remaining counts on or before **Wednesday, December 2, 2026**, namely: (1) the Voter Plaintiffs' damages claims in Count I against

[351] To the extent Count VII seeks prospective relief via an injunction against an ongoing violation of federal law, sovereign immunity does not shield Landry from suit under *Ex parte Young*.

[352] To the extent Count VII seeks a backward-looking declaratory judgment that the DRE voting system violated the Plaintiffs' rights on May 16, 2026, such a request does not constitute prospective relief and ~~so~~ falls outside the bounds of the *Ex parte Young* exception to sovereign immunity.

Saylor, DiMarco, and the Board; (2) Singleton's damages claim in Count II against Saylor, DiMarco, and the Board; (3) Weathersby's damages claim in Count III against Saylor and DiMarco; (4) Weathersby's damages claim in Count IV against Saylor and DiMarco; (5) the Voter Plaintiffs and Singleton's damages claims in Count V against Saylor, DiMarco, and the Board; (6) all Plaintiffs' claim for injunctive relief against Landry in Count VII.

Plaintiffs and Plaintiffs' counsel are reminded that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[353] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[354] The Court, however, does not accept as true legal conclusions or mere conclusory statements, and "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[355]

The amended complaint must be a complete complaint and will not incorporate prior pleadings by reference. If an amended complaint is timely filed, the Court will deny the applicable portions of the Motion to Dismiss without prejudice.

**New Orleans, Louisiana, this 12th day of November, 2026.**

Susie Morgan

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

353 *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
354 *Id.*
355 *S. Christian Leadership Conf. v. Sup. Ct. of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001) (citing *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)).